In the Matter of the Application of THE UVALDE CON-TRACTING COMPANY, Respondent, *v.* DOUGLAS MATHEW-SON, as President of the Borough of The Bronx, et al., Appellants.

Contracts — construction of clause in contract for repairing street and guaranteeing pavement against defects.

. Where a contractor by a clause in a contract for repairing the pavement in a street guaranteed the *entire* pavement against all defects and was to receive payment provided at a certain date the *entire* pavement should be in good condition, such guaranty covers what is termed both the " street area " and the " railroad area," although another clause related specifically to the maintenance of the pavement of the street area outside of the railroad area. Such a construction harmonizes all the covenants and gives effect to each of them.

*Matter of Uvalde Contracting Co.* v. *Mathewson*, 173 App. Div. 938, reversed.

(Argued October 11, 1916; decided November 21, 1916.)

APPEAL from an order of the Appellate Division of the Supreme Court in the first judicial department, entered April 28, 1916, which affirmed an order of Special Term granting a motion for a writ of mandamus direct-ing the president of the borough of The Bronx and the chief engineer of sewers and highways in the city of New York to forward to the comptroller a certificate that the relator's contract had been fully performed, and that it was entitled to full payment thereunder.

The facts, so far as material, are stated in the opinion.

*Lamar Hardy, Corporation Counsel (Charles J. Nehrbas, Terence Farley* and *John F. Collins*), for appellants.

*James Garretson* and *Joseph H. Choate, Jr.*, for Union Railway Company of New York City, intervening.

*James F. McKinney* for respondent. The contractor was under no duty to repair any portion of the pavement laid within the railroad franchise area, and the order for a mandamus properly issued. (*Bank of Montreal* v. *Recknagel,* 109 N. Y. 482; *Pennell* v. *Mayer,* 27 J. & S. 279; *Richards* v. *Warring,* 39 Barb. 42; *Ripley* v. *Larmouth,* 56 Barb. 21; *Niederstein* v. *Cusick,* 83 App. Div. 36; *Fox* v. *International Hotel,* 41 App. Div. 140; *Sattler* v. *Hallock,* 160 N. Y. 291; *Stokes* v. *Recknagle,* 6 J. & S. 368; *Nicoll* v. *Sands,* 131 N. Y. 19; *Mayor, etc.,* v. *N. Y. R. Cons. Co.,* 8 Misc. Rep. 61; *MacClanathan* v. *Friedel,* 85 Hun, 175.)

CARDOZO, J.  In April, 1913, the president of the borough of The Bronx in the city of New York gave notice to the Union Railway Company that it must repair the pavement in Boston Road between the tracks and for a width of two feet outside of the tracks. This space is styled in the record "the railroad area." The railway company is charged by law with the duty of keeping it in repair (Railroad Law [Consol. Laws, ch. 49] § 178, as amended by Laws of 1912, ch. 368). The notice was disregarded, and the city proceeded to do the work itself. For that purpose it made a contract with the relator. The contract covered not only the "railroad area," but also the rest of the street. The pavement outside of the "railroad area" will, for convenience, be spoken of as the "street area." The work was finished in August, 1913; the railway company paid its proportion of the cost; and within two years thereafter defects developed in the pavement between the tracks. The city insisted that the

relator must make good the defects; the relator denied that the contract charged it with that duty. The city thereupon did the work at a cost of $750.51, and deducted the cost from a percentage of the contract price not yet paid to the relator. Whether the deduction is authorized is the question to be determined. To answer the question, we must analyze the contract.

In covenant B it is provided: "The contractor shall * * * furnish all the material and labor necessary or proper for the purpose, and in good substantial and workmanlike manner repave with sheet asphalt on a concrete foundation the street above mentioned * * * and maintain the said pavement in good condition, to the satisfaction of the President, for a period of five years from the date of the completion and acceptance thereof, except such portion of said pavement as is included between lines parallel with and two feet outside of the outside rails of the tracks of any railway company."

The period of five years mentioned in this covenant was afterwards changed by agreement to ten years. During those ten years, the "street area," but not the "railroad area," is to be kept in repair at the expense of the contractor.

There is, however, another covenant which imposes on the contractor a duty, though for a shorter term, not only in respect of the street area, but in respect of the railroad area as well. This is covenant GG. It first provides that 15% of the total cost of the work will be retained for twelve months after acceptance by the president of the borough. This period of twelve months was afterwards changed by agreement to two years. It then provides: "Within thirty (30) days after the expiration of the said twelve (12) months [afterwards changed to two years], provided the *entire* pavement shall at that time be in good condition, and provided any defects which may have developed shall have been remedied, the City, upon the filing of the certificate of the Engineer, as by

law provided, that the terms of the contract have been complied with, will pay to the Contractor the whole of the sum retained, or such part thereof as may remain after the expenses of making repairs in the manner aforesaid shall have been paid therefrom  *  *  *.. During the said period of twelve (12) months [afterwards changed to two years], the Contractor expressly guarantees the *entire* pavement against all defects, such guarantee so secured by the retention of the said 15% to be a separate and distinct guarantee from the guarantee of such pavement secured by the bond executed by the contractor and sureties."

The relator insists that this guarantee, like the ten-year guarantee in covenant B, excludes the railroad area. We do not so construe it. In marked contrast with covenant B, it provides in so many words that it shall extend to the "entire" pavement. Two guarantees are contemplated. One is limited to the street area, survives the payment of the reserved percentage, imposes an absolute duty of maintenance and remains in force for ten years. The other covers the entire pavement, is complementary to the security of the reserved percentage and remains in force for two years. The adequacy of the relator's performance is to be measured by the conditions that have revealed themselves when the reserved payment becomes payable. If any part of the pavement is then defective, performance is not complete. That construction of the contract harmonizes all the covenants, and gives effect to each of them. The relator is to be paid for the whole pavement, and yet insists that its guarantee of the quality of the work must be confined to a part only. So one-sided a bargain will not readily be found to have been made.

The order should be reversed, with costs in all courts and the application for a writ of mandamus denied.

WILLARD BARTLETT, Ch. J., HISCOCK, CHASE, COLLIN, CUDDEBACK and HOGAN, JJ., concur.

Order reversed, etc.